LANDMARK INVESTMENT GROUP, LLC *v.* CHUNG
FAMILY REALTY PARTNERSHIP, LLC
(AC 33083)

Gruendel, Robinson and Sullivan, Js.

Argued January 19—officially released August 7, 2012

*Walter A. Twachtman, Jr.*, for the appellant (defendant).

*Anne D. Peterson*, with whom, on the brief, were *Christopher Rooney* and *Kurtis Z. Piantek*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant, Chung Family Realty Partnership, LLC, appeals from the trial court's order granting the application for a prejudgment remedy filed by the plaintiff, Landmark Investment Group, LLC. On appeal, the defendant claims that (1) the doctrine of res judicata prevents the plaintiff from relitigating issues that have been or could have been litigated in the first litigation; and (2) the court erred when it awarded the plaintiff a prejudgment remedy in the amount of $4.5 million. We affirm the judgment of the court.

The following facts and procedural history are relevant to our review of the defendant's appeal. On June 30, 2005, the plaintiff and the defendant entered into a purchase and sale agreement for commercial real estate located at 311-349 New Britain Avenue in Plainville. A

dispute arose regarding the agreement. On December 19, 2006, the plaintiff commenced an action against the defendant, claiming, inter alia, breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. See *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, Superior Court, judicial district of New Britain, Docket No. CV-07-5003201-S (August 19, 2009) (*Landmark I*). On August 19, 2009, following a trial, the court issued its memorandum of decision. The court in *Landmark I* found that the defendant had breached the contract and had violated CUTPA. On December 28, 2010, this court affirmed the judgment of the trial court. *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, 125 Conn. App. 678, 10 A.3d 61 (2010), cert. denied, 300 Conn. 914, 13 A.3d 1100 (2011).

On April 19, 2010, the town of Plainville initiated foreclosure proceedings to collect unpaid taxes due on the property. The total amount of unpaid taxes was approximately $131,000. Both the plaintiff and the defendant in the present action were named as defendants in the tax foreclosure proceeding. On December 3, 2010, while the foreclosure proceedings were pending, the plaintiff filed its application for a prejudgment remedy against the defendant, along with a proposed complaint, alleging breach of contract. Specifically, the plaintiff alleged that the defendant's failure to pay the real property taxes was a breach of the purchase and sale agreement. The plaintiff argued that there was probable cause that a judgment would be rendered against the defendant and that the potential damage to the plaintiff would be $4.5 million.

The court held an evidentiary hearing on January 13, 2011. During the hearing, the court heard testimony from, inter alia, the plaintiff's appraisal expert, William Kane, and received documentary evidence from the

plaintiff. The defendant called no witnesses. At the conclusion of the hearing, the defendant raised the defenses of laches, waiver and res judicata. On January 14, 2011, the court issued its memorandum of decision granting the plaintiff's application in the amount of $4.5 million. In its memorandum of decision, the court made several findings of fact. Important to our discussion, which follows, the court found that, although the parties litigated the enforceability of the agreement before, "the issue in *this* case was not raised in [*Landmark I*]." The court noted that the memorandum of decision in *Landmark I* made "no mention of any claim of unpaid or delinquent taxes. Moreover, [*Landmark I*] [was] commenced in December, 2006, and the tax liens, which [gave] rise to the foreclosure action, were not placed on the property until some time after. The failure to pay the taxes became material and caused injury to [the plaintiff] when the town of Plainville chose to exercise its right to foreclose on the property in 2010. It was not until this time that the [defendant's] failure to pay the taxes became material and caused injury to [the plaintiff] due to the potential change of ownership of the property as a result of the judgment of foreclosure by sale on November 1, 2010." The court also found that the plaintiff established the probability of a judgment in its favor in the amount of $4.5 million. This appeal followed.[1]

I

The defendant first claims that the doctrine of res judicata should have prevented the plaintiff from relitigating issues that have been or could have been litigated in the first litigation. It contends that the claim brought by the plaintiff in the present action is a part of the

---

[1] We have regularly held that the granting of a prejudgment remedy is a final judgment for the purposes of appeal. See, e.g., *Marlin Broadcasting, LLC* v. *Law Office of Kent Avery, LLC*, 101 Conn. App. 638, 641 n.1, 922 A.2d 1131 (2007).

transaction or series of transactions out of which the first action arose. That action, according to the defendant—including the purchase and sale agreement, the time frame, the actions of the parties, the claim for damages and conduct of the parties—forms a convenient trial unit. The defendant argues that there is a substantial overlap of witnesses in the present case as compared with *Landmark I*. It also argues that the same purchase and sale agreement is in dispute, and the plaintiff is seeking the same claim for damages.[2]

In response, the plaintiff argues that the present action is not barred by the doctrine of res judicata. The plaintiff contends that the issue in *Landmark I* was the defendant's wrongful termination of the agreement on the basis of the failure to obtain funding for the cleanup of the property. It argues that the court in *Landmark I*, by ordering specific performance of the agreement, reinstated the agreement on the terms originally agreed to by the parties. In contrast, the plaintiff notes that the complaint in the present action alleges a breach of contract claim against the defendant for its additional breaches of the agreement that occurred when the town of Plainville initiated foreclosure proceedings in April, 2010, which was more than eight months after the judgment was rendered in *Landmark I*. The plaintiff emphasizes that the injury is not the failure to pay taxes, but the commencement of the foreclosure action by the town of Plainville, which resulted in the loss of the property by a foreclosure sale on March 19, 2011. The plaintiff argues that it is well settled that the doctrine of res judicata does not apply to preclude litigation of claims that rest in whole or in part on facts, conduct or

---

[2] The defendant further argues that the court improperly placed the burden on it to introduce its failure to pay the real property taxes at the first trial. Because we conclude that the injury giving rise to the cause of action in this matter occurred after the conclusion of the previous matter, we are not persuaded by this argument.

occurrences that happened after the date of the original judgment. Finally, the plaintiff argues that the claims should not be barred "as a matter of simple equity . . . ."

We begin by setting forth the relevant standard of review. "[T]he applicability of res judicata . . . presents a question of law over which we employ plenary review. . . . The principles that govern res judicata are described in Restatement (Second) of Judgments . . . . The basic rule is that of § 18, which [provides] in relevant part: When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . . As comment (a) to § 18 explains, [w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be merged in the judgment. Our . . . case law has uniformly approved and applied the principle of claim preclusion or merger. . . .

"Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the original claim, it is crucial to define the dimensions of that original claim. The Restatement (Second), Judgments provides, in § 24, that the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage. In amplification of this definition of original claim, § 25 of the Restatement (Second) [of Judgments provides] that [t]he rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action.

"The transactional test of the Restatement [(Second) of Judgments] provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include any claims relating to the cause of action which were actually made or might have been made. . . . In determining the nature of a cause of action for these purposes, we have long looked to the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . .

"The Restatement (Second) of Judgments further explains, with respect to how far the witnesses or proof in the second action would tend to overlap the witnesses or proof relevant to the first, [i]f there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series. 1 Restatement (Second), Judgments § 24, comment (b) (1982). Similarly, [w]hen a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well

as the public convenience may require that they be dealt with in the same action. . . .

"Our rules of res judicata are based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate. . . . [T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy. [F.] James & [G.] Hazard, Civil Procedure (3d Ed. 1985) § 11.2, p. 590. . . . [T]he purposes of res judicata [of] promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties . . . [however, must be] balanced against the competing interest of the plaintiff in the vindication of a just claim. . . . Indeed, we have recognized that the application of res judicata can yield harsh results . . . and, as a result, have stated that the doctrine should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citations omitted; internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 347–50, 15 A.3d 601 (2011).

The issue requires us to examine the previous action. "In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 590, 674 A.2d 1290 (1996). Specifically at issue in *Landmark I* was the enforceability of the June 30, 2005 purchase and sale agreement. *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, supra, 125 Conn. App. 680–86. In *Landmark I*, the plaintiff filed a six count complaint alleging breach of contract, breach of the implied covenant of good faith and fair dealing, violation of CUTPA and interference with contractual relations. Id., 685. The defendant filed special defenses

"averring that [the plaintiff] was limited to remedies set forth in the agreement, that all other relief sought was barred by the economic loss doctrine and that the agreement was voidable due to mutual mistake." Id., 686. On August 19, 2009, the trial court rendered judgment in favor of the plaintiff, rejecting the defendant's special defense of mutual mistake and finding breach of contract and a violation of CUTPA. Id. The court awarded the plaintiff specific performance on the contract claim, including a return of its deposit should it elect under the contract to terminate its obligations, and attorney's fees on the CUTPA claim. Id. This court subsequently affirmed the trial court's judgment. Id., 708.

The complaint in the present matter addresses a separate issue altogether. The plaintiff's complaint contains one breach of contract count. The plaintiff notes in its complaint that the court in the previous action ordered that the agreement be specifically performed according to its terms. The complaint claims that after the case was decided, and while it was being appealed, the defendant continued to breach the agreement and committed new breaches that have caused injury to the plaintiff. Specifically, the plaintiff claims that the defendant failed to keep current its municipal taxes owed to the town of Plainville. The plaintiff claims that the defendant failed to pay the real estate taxes on the property for the years of 2006, 2007, 2008, 2009 and 2010. The complaint further claims that the defendant's failure to pay taxes to the town resulted in Plainville instituting a foreclosure action to collect its unpaid taxes against the defendant on April 19, 2010.

The defendant argues that there is substantial overlap in the two cases because the two cases involve the same purchase and sale agreement, a second claim for breach of contract, and two of the same witnesses, Glen Russo, executive manager of the plaintiff, and the plaintiff's appraisal expert, Kane. The defendant further

notes that Kane used the same report and estimation for damages in this matter as he did in *Landmark I.* Although we agree with the defendant that the cases overlap to the extent specified, they remain sufficiently distinct to elude the application of the doctrine of res judicata.

The injury that provides the foundation for the plaintiff's cause of action in this matter—the foreclosure action brought by the town of Plainville—occurred wholly subsequent to the judgment in the previous matter. The court issued its memorandum of decision in the previous action rendering judgment in favor of the plaintiff on August 19, 2009. The foreclosure action was initiated on April 19, 2010. Although it is true that the plaintiff either knew or should have known that the defendant was behind in paying municipal taxes during the previous action, it remained the defendant's obligation to pay the taxes throughout the proceedings and after the court granted specific performance.[3] As such, the conduct complained of occurred *after* the judgment alleged by the defendants to have preclusive effect. "Pursuant to a comment to the Restatement section articulating the transactional test for res judicata, which Connecticut cases employ, [m]aterial operative facts occurring *after* the decision of an action with respect to the same subject matter may in themselves, or *taken in conjunction with the antecedent facts,* comprise a transaction which may be made the basis of a second action not precluded by the first. . . . 1 Restatement (Second), [Judgments] § 24, comment (f), p. 203 (1982); see, e.g., *Lawlor* v. *National Screen Service Corp.,* 349

---

[3] Article 12.1.4 of the agreement provides: "[The defendant] shall keep current all municipal real estate taxes, assessments and levies, and shall not encumber the [p]roperty and shall not suffer any liens to be placed upon the [p]remises during the term of this [a]greement, and shall further pay any and all bills as they become due for any work performed for [the defendant] and/or on or for the benefit of the [p]roperty for which a mechanics lien can be filed."

U.S. 322, 327–28, 75 S. Ct. 865, 99 L. Ed. 1122 (1955) (prior conspiracy action does not preclude second conspiracy action against same defendant where plaintiff relies on conspiratorial acts postdating judgment in first action); *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 319, 460 A.2d 1277 (1983) (adjudication that ground for termination of parental rights did not exist at one time does not mean ground has not arisen at later time); *Kimmel* v. *Iowa Realty Co.*, 339 N.W.2d 374, 379 (Iowa 1983) (successive actions for fraud, breach of fiduciary duty allowed where there are continuing wrongs or significantly changed circumstances)." (Emphasis in original; internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 297–98, 794 A.2d 1029 (2002). As we stated in *Cadle Co.*, "[t]o conclude that [the plaintiff's] claim is now barred by res judicata would be to require omniscience in litigation." Id., 298. Requiring no such omniscience, we conclude that the doctrine of res judicata does not apply under these circumstances.

## II

The defendant next claims that the court erred when it awarded the plaintiff a prejudgment remedy in the amount of $4.5 million. The defendant argues that the plaintiff offered insufficient evidence to establish that it would suffer damages in the amount of $4.5 million. The defendant contends that Kane's report was based on information from the plaintiff and others on how the plaintiff would develop the premises. The defendant argues, however, that the plaintiff did not sign up any tenants and had no engineering or architectural plans prepared. The defendant claims that there was not one aspect of the appraiser's report and opinion that was based on actual fact.

"A prejudgment remedy means any remedy or combination of remedies that enables a person by way of

attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment . . . . General Statutes § 52-278a (d). A prejudgment remedy is available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . . General Statutes § 52-278d (a) (1). . . . Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . .

"As for [the] standard of review [on appeal], [an appellate] court's role on review of the granting of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need

only decide whether the trial court's conclusions were reasonable under the clear error standard." (Internal quotation marks omitted.) *Crotty* v. *Tuccio Development, Inc.*, 119 Conn. App. 775, 778–80, 990 A.2d 888 (2010).

The court noted that Kane was an expert real estate appraiser and that he performed his assessment as of October 27, 2006, the date the breach of contract occurred in the previous action. The court found that Kane determined "what if any losses would have occurred if [the plaintiff] had been allowed to purchase the property, and utilized various acceptable and recognized appraisal practices and analyses." The court further noted that, although the defendant argued that Kane's report and findings were based on speculation, the defendant had no quarrel with the methodology employed by Kane in reaching the potential lost profits amount. The court found that all of the assumptions and conclusions that Kane made were based on sound methodology and recognized real estate appraisal practices, as well as based on factual data. The court then concluded that on the basis of the evidence produced at the hearing, the plaintiff had established the probability of a judgment in its favor in the amount of $4.5 million.

The court did not commit clear error. The defendant conceded that Kane was an expert. The defendant argues that Kane's report and testimony were based on speculation and, therefore, improperly were admitted into evidence. We disagree. "The role of the judge as gatekeeper in weighing the reliability of expert testimony was stated by the United States Supreme Court in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and incorporated into the law of this state in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d

645 (1998). In *Porter,* our Supreme Court restated the *Daubert* list of potential factors to be considered when the trial court properly is exercising its role as gatekeeper of the admissibility of scientific expert evidence. Id., 64." *Message Center Management, Inc.* v. *Shell Oil Products Co.,* 85 Conn. App. 401, 421–22, 857 A.2d 936 (2004).

"Damages may be awarded on the basis of lost profits when the subject of the damages relates to an unestablished enterprise or if there is no other alternative in terms of the valuation of damages. *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin,* [247 Conn. 48, 63–64, 717 A.2d 724 (1998)]. A damages theory may be based on assumptions as long as those assumptions are reasonable in light of the record evidence. See *National Farmers' Organization, Inc.* v. *Associated Milk Producers, Inc.,* 850 F.2d 1286, 1301–1303 (8th Cir. 1988), cert. denied, 489 U.S. 1081, 109 S. Ct. 1535, 103 L. Ed. 2d 840 (1989). The reasonableness of those assumptions is to be determined by the trier of fact. *General Leaseways, Inc.* v. *National Truck Leasing Assn.,* 830 F.2d 716, 726–27 (7th Cir. 1987)." *Message Center Management, Inc.* v. *Shell Oil Products Co.,* supra, 85 Conn. App. 424.

Here, the trier of fact was the court, and it implicitly found that Kane's report was reasonable. The court stated that "[a]ll of the assumptions made by Kane in reaching his conclusions were based on sound methodology and recognized real estate appraisal practices, as well as based upon factual data. The [trial] court has reviewed the report submitted by Kane, and considered his testimony. Kane submitted two scenarios as to the calculations of lost profits, one from the original development plan, which indicated a lost profit of $4.2 million, and a second from an alternative development plan, which indicated a lost profit of $5 million. . . . Based upon the evidence produced at the hearing, the

plaintiff has established, to the court's satisfaction, the probability of a judgment in its favor in the amount of $4.5 million." (Citation omitted.) Furthermore, the defendant did not introduce any evidence or expert witness to rebut Kane's testimony. Therefore, we conclude that the court's finding of probable cause to grant the prejudgment remedy is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.