******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., concurring in the judgment. I reach the same result as the majority, albeit for different reasons. In my view, the trial court correctly concluded that the facts of this case did not support a finding of tortious interference with contractual relations, but not for the reasons offered by the defendants[1] and relied on by the trial court. I believe that the plaintiff, Landmark Investment Group, LLC (Landmark), could not obtain a judgment for tortious interference against the defendants because any cause of action that Landmark could have stemming from its contract with Chung Family Realty Partnership, LLC (Chung), merged into the decree of specific performance entered in the separate breach of contract action between Landmark and Chung. The decree terminated the contract between Landmark and Chung, so Landmark could not obtain a subsequent judgment on the basis of that contract. Because, however, the defendants did not raise this issue in the trial court—or on appeal, for that matter— I am compelled to join in this court's judgment.

The disputes over the continued existence of the Landmark-Chung contract and the timing of the alleged tortious interference all grow out of the same diseased root: the specific performance decree. The defendants argue that there can be no tortious interference because the alleged acts of interference principally occurred after Chung terminated its contract with Landmark, and there was no contractual relationship to interfere with after that point. Landmark responds that the contractual relationship did continue after termination, relying principally on the trial court's conclusion in the specific performance action that Chung did not have the power to terminate the contract, which led the court to order specific performance by directing the parties to continue to perform the contract. In my view, the decree of specific performance was improper.

I note preliminarily that the decree was poorly framed. The court in the specific performance action stated in its decision that "Landmark is entitled to proceed under the terms of the original contract or terminate at any point, pursuant to the termination clause of the contract." *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, Superior Court, judicial district of New Britain, Docket No. CV-07-5003201-S (August 19, 2009). But a decree of specific performance cannot be merely "a general decree that in the future the delinquent party shall perform the acts required of him by his contract." (Internal quotation marks omitted.) *Fritsch* v. *Hilton Land & Cattle Co.*, 245 Neb. 469, 477, 513 N.W.2d 534 (1994), quoting 71 Am. Jur. 2d 287, Specific Performance § 221 (1973); see

also *Morgan* v. *United States Fidelity & Guaranty Co.*, 191 So. 2d 851, 854 (Miss. 1966) (decree must specifically set out parties' obligations without reference to extrinsic documents, and court cannot issue general decree commanding compliance with contract). In addition, the decree improperly left Landmark with a unilateral right to terminate its rights and obligations thereunder. See, e.g., *Thompson* v. *Burns*, 15 Idaho 572, 603, 99 P. 111 (1908) ("When a decree is based on a certain contract and requires its specific performance, it must require the performance of the contract by the plaintiff as well as the defendant. . . . [T]he judgment must not be so entered as to leave it optional with the plaintiff whether he performs his part or not. . . . A decree for specific performance is not, and is not intended to be, an option that can be held for speculative purposes over the title of valuable property."). If Landmark did not want to specifically enforce the contract without retaining its ability to terminate it at will, Landmark should have pursued a remedy of damages instead of seeking specific performance.

More fundamentally, however, specific performance is not appropriate when it would require a continuing and volatile relationship between the parties that the court would be forced to oversee. See, e.g., *Hill* v. *Raffone*, 103 Conn. App. 737, 744, 930 A.2d 788 (2007) (upholding trial court's decision not to enter specific performance decree that would be "difficult to fashion and a nightmare to enforce" [internal quotation marks omitted]). Given the myriad conditions in the Landmark-Chung contract, specific performance should not have been ordered, or the court should have set more specific terms. The court's failure to do so allowed substantial complications to arise that ultimately prevented its order from being carried out. By referring the parties back to their contract for its continued performance as if no breach occurred, the trial court gave the erroneous impression that the contract was still in effect and set the stage for further disputes and confusion as to the parties' rights and obligations.

Complications between the parties arose soon after the court entered its decree and ultimately brought the parties back to court. As the majority explains, Landmark delayed completion of its permitting conditions under the contract because of ongoing litigation. Chung ran out of money and failed to pay taxes on the property at issue to the town of Plainville, causing the town to bring a foreclosure action. Meanwhile, the defendants continued to act as if their separate contract with Chung subsisted, despite the order of specific performance, and the defendants later blocked Landmark from preventing a foreclosure by the town. Landmark ultimately lost the property after the foreclosure sale, which prevented Chung from complying with the specific performance decree. Landmark then brought an action against Chung, alleging breach of contract on

the basis of Chung's failure to pay its property taxes. See *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, 137 Conn. App. 359, 361, 48 A.3d 705, cert. denied, 307 Conn. 916, 54 A.3d 180 (2012). Landmark and Chung recently settled that action by entering into a stipulated judgment. See *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, Superior Court, judicial district of New Britain, Docket No. HHB-CV-10-5015189-S (March 20, 2015) (order). All of this could have been avoided with a proper decree or an award of damages in lieu of specific performance.

Although the decree may have been improper, its entry nevertheless merged the contract into the decree, which effectively resolved any claims by Landmark based on the contract and terminated the contractual relationship between Landmark and Chung. Under the doctrine of merger, when a court enters a decree of specific performance, the parties' contract merges into the judgment, and the plaintiff cannot later bring an action for breach of that contract. See, e.g., *Thompson* v. *Burns*, supra, 15 Idaho 603; *Zlotziver* v. *Zlotziver*, 169 Pa. Super. 588, 592, 83 A.2d 429 (1951); see also 1 Restatement (Second), Judgments § 18, illustration (3), pp. 153–54 (1982) ("A and B enter into a contract for the sale of land located in State X. B refuses to convey the land. A brings an action for specific performance in State X, and a judgment is entered in his favor ordering B to convey the land. A is precluded by the judgment from maintaining a second action in State X to secure money damages in lieu of specific performance, or to obtain damages for delay in conveying the land in addition to the specific performance already adjudged."). Any tortious interference claims a plaintiff may have also merge into the specific performance decree because the plaintiff has obtained relief for the breach through specific performance. See, e.g., *Douglas Theater Corp.* v. *Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 886–87, 681 N.E.2d 564 (party that obtains specific performance for breach of contract cannot also recover for tortious interference against third parties), appeal denied, 174 Ill. 2d 558, 686 N.E.2d 1160 (1997). The contractual relationship between the parties is terminated, and any future remedy concerning the parties' obligations under the decree must come from the court's contempt power or an action on the judgment. See 1 Restatement (Second), supra, § 18, pp. 151–52; see also *Forcier* v. *Sunnydale Developers, LLC*, 84 Conn. App. 858, 860–61, 856 A.2d 416 (2004) (contempt action seeking to enforce specific performance decree).

Because of the doctrine of merger, Landmark could not properly recover for tortious interference against the defendants for interference with the Landmark-Chung contract. Any tortious interference claim based on acts of interference occurring before the decree of specific performance was merged into the decree. And

Landmark cannot have a tortious interference claim for acts of interference occurring after the decree because there no longer was a contractual relationship between the parties—the contract had merged into the decree, which the parties could enforce through the powers of the court.

Unfortunately, the trial court did not have the ability to consider these issues because the defendants did not raise them. The defendants instead argued that contractual relations between Landmark and Chung terminated when Chung purported to terminate the contract, an argument that cannot succeed because, as the majority explains, Chung did not have the power to terminate the contract. Because the issues I address in this concurrence were not raised, the defendants cannot obtain relief on this basis. I am therefore constrained to join in the court's judgment even though I believe the trial court's ultimate conclusion was correct.

Accordingly, I concur in the judgment.

[1] The defendants to which I refer are the named defendant, CALCO Construction & Development Company (CALCO), and the defendant John Senese, the president and owner of CALCO.

———————————————