******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ASPIC, LLC *v.* BRACK G. POITIER
(AC 39301)

Alvord, Bright and Sullivan, Js.

*Syllabus*

The defendant, a general partner in four limited partnerships, appealed to
this court from an order of the trial court granting the plaintiff's applica-
tion for a prejudgment remedy. The plaintiff had brought an action
seeking to recover, inter alia, monetary damages from the defendant
for default on certain promissory notes that had been executed by
H, the managing partner of the limited partnerships. The defendant's
partnership agreements provided that each general partner had unlim-
ited personal liability for all obligations of the partnerships. In response
to the plaintiff's application for a prejudgment remedy, the defendant
had filed special defenses, alleging, inter alia, that H had breached
fiduciary duties to the defendant and the limited partnerships. Following
a hearing, the trial court noted that it did not have sufficient information
to determine the ultimate strength of the defendant's breach of fiduciary
duty defense and granted the plaintiff's application for a prejudgment
remedy in the amount of $1 million. On appeal, the defendant claimed,
inter alia, that the trial court erred in awarding the plaintiff the prejudg-
ment remedy because he specifically pleaded, inter alia, a breach of
fiduciary duty defense, which required the court to shift the burden to
the plaintiff to establish fair dealing. *Held* that the trial court committed
clear error in granting the plaintiff's application for a prejudgment rem-
edy: where, as here, the defendant raised a breach of fiduciary duty
defense and the court found that H owed a fiduciary duty to the defendant
and the limited partnerships, the plaintiff had the burden at the prejudg-
ment remedy hearing to establish probable cause, and not by clear and
convincing evidence, that it could prove the fairness of the transactions,
namely, the plaintiff had to present evidence to establish probable cause
to believe that it would be successful on the merits of its cause of action
and that it had engaged in fair dealing with respect to the transactions
at issue, and the trial court then was required to assess whether such
probable cause existed before granting a prejudgment remedy; more-
over, although the court made the requisite finding of probable cause
to sustain the merits of the underlying action before taking into consider-
ation the defense of breach of fiduciary duty, it, thereafter, did not make
the requisite finding that there was probable cause to believe that the
plaintiff would overcome that defense by demonstrating that it had
engaged in fair dealing, as the court's finding that it could not make
any prediction regarding the fiduciary duty defense, without more,
should have led to a conclusion that the plaintiff had failed to meet its
burden to establish probable cause that it could prove the fairness of the
transactions and should have resulted in the denial of the prejudgment
remedy, and the court, by granting the prejudgment remedy in the
absence of any finding that the plaintiff had met its burden, improperly
placed the burden of proving the unfairness of the transactions on
the defendant.

Argued November 28, 2017—officially released February 13, 2018

*Procedural History*

Action to collect on promissory notes, and for other
relief, brought to the Superior Court in the judicial dis-
trict of New Haven, where the plaintiff served the defen-
dant with notice of an ex parte prejudgment remedy;
thereafter, the court, *Hon. Howard F. Zoarski*, judge
trial referee, granted the defendant's motion to dissolve
the prejudgment remedy; subsequently, the plaintiff
filed an application for a prejudgment remedy; there-
after, the court, *Ecker, J.*, granted the plaintiff's applica-

tion for a prejudgment remedy, and the defendant appealed to this court. *Reversed*; *further proceedings*.

*Mark A. Rosenblum,* with whom was *Michael D. Blumberg,* for the appellant (defendant).

*Timothy A. Diemand,* with whom were *Jeffrey R. Babbin* and, on the brief, *Michael Menapace,* for the appellee (plaintiff).

*Opinion*

BRIGHT, J. The defendant, Brack G. Poitier, appeals from the judgment of the trial court granting the prejudgment remedy application filed by the plaintiff, ASPIC, LLC. The defendant claims that the trial court erred in awarding the plaintiff a $1 million prejudgment remedy because he specifically had pleaded, inter alia, a defense of breach of fiduciary duties, which required the court to shift the burden to the plaintiff to establish fair dealing, and the court failed to do so. He also claims that even if the court appears to have shifted the burden, the record was devoid of evidence to demonstrate fair dealing. Finally, the defendant claims that the trial court failed to make any finding that the plaintiff had met its burden to show that there was probable cause that it would prevail in establishing that the transactions at issue were the product of fair dealing. We agree with the defendant and reverse the judgment of the trial court.

The following facts, as ascertained from the record, reasonably could have been found by the trial court.[1] The plaintiff is a single member limited liability company, whose sole member is Municipal Capital Appreciation Partners III, L.P. (Muni). The defendant is a general partner in four limited partnerships, GAB Hill Limited Partnership, BHP Limited Partnership, WCH Limited Partnership, and Renaissance Limited Partnership. These partnerships collectively are known as the Court Hill Partnerships (Court Hill). The partnership agreements provide that each general partner has unlimited personal liability for all obligations of the partnerships. Court Hill owns properties that served low income individuals in the New Haven area. In addition to the defendant, George Bumbray and Wendell C. Harp[2] also are general partners in Court Hill, with Harp having been appointed as the managing partner. Harp's company, Renaissance Management Company, Inc. (Renaissance), acts as the managing agent for all of the properties owned by Court Hill.

On December 24, 2008, Harp, on behalf of Court Hill, signed an amended and restated promissory note in the amount of $2,039,763 in substitution for an August, 2008 promissory note.[3] The note purported to memorialize Court Hill's debt for "operating expenses as of November 30, 2008, plus accrued interest" by entering into an "amended and restated promissory note" with Renaissance for that amount. Harp endorsed this note four times, once for each of the Court Hill member partnerships. Also on December 24, 2008, Harp, on behalf of Court Hill, then entered into an "amended and restated promissory note," in the amount of $817,692, with Harp, individually. This note also was for "operating expenses as of November 30, 2008, plus accrued interest thereon." Harp also endorsed this note four times, once for each of the Court Hill member partnerships.[4]

On December 30, 2008, Harp, on behalf of himself and Renaissance, executed a loan agreement and a $1.5 million promissory note with Muni (Muni note). The loan agreement provided in part that $695,963.94 of the loan would be advanced to Harp and Renaissance "to be used by [Harp and Renaissance] to repay the promissory note made by [Muni] to Harp," and that proceeds from this loan also were to be used to pay federal, state, and local tax liabilities of Harp and/or Renaissance. Schedule 7(f) of the loan agreement contains, inter alia, a listing of the tax obligations of Renaissance: $950,000 to the Department of Revenue Services; $732,000 to the Internal Revenue Service; and $3700 to the city of New Haven.

Harp, Renaissance, and Muni also entered into a "pledge and security agreement" on December 30, 2008, whereby Renaissance and Harp pledged as collateral for the Muni note their interests in and rights under the Court Hill notes. Additionally, on April 1, 2009, Harp, Renaissance, and Muni entered into a "first amendment to pledge and security agreement" (amended security agreement), which amended the December 30, 2008 pledge and security agreement to include a collateral pledge of two additional notes payable by Court Hill (2009 advance notes), one in favor of Renaissance in the amount of $251,010 for operating expenses between December 1, 2008, and February 28, 2009, and one in favor of Harp in the amount of $13,572, also for operating expenses during that same period.

The entire principal balance of the Muni note was due and payable on December 31, 2010, but no payment ever was made. The note is in default.

In light of the default on the Muni note and the amended security agreement, Muni held a public sale of the collateral on January 8, 2014, at which it was the highest bidder. Muni thereafter transferred legal title of the collateral to the plaintiff, which now seeks to enforce the Court Hill notes and the 2009 advance notes against the defendant, a general partner in Court Hill.

On the basis of the foregoing, the plaintiff, in an application filed on December 10, 2015, sought a prejudgment remedy against the defendant in the amount of $3 million. The defendant raised the following amended special defenses: (1) the Court Hill collateral notes are void for lack of consideration; (2) the Court Hill collateral notes were procured by fraud; (3) to the extent that the defendant can be held liable, he is liable only for the amounts on the Court Hill collateral notes; (4) the plaintiff has accepted payment for the sums due; (5) any and all obligations to pay the Court Hill collateral notes have been assumed by third parties; (6) the plaintiff is barred from recovery by unclean hands; (7) the plaintiff is barred from recovery by virtue of Harp's breach of his fiduciary duties to Court Hill and the

defendant; and (8) the plaintiff is barred from recovery by virtue of Renaissance's breach of its fiduciary duties to Court Hill and the defendant.[5]

Following a hearing, the court issued its ruling on the plaintiff's application on June 7, 2016. The court first addressed the evidence presented in support of the plaintiff's allegations and found that the plaintiff had established probable cause to sustain the validity of its claim on the promissory notes at issue. The court then addressed all of the defendant's defenses, except his breach of fiduciary duty claims, and held that none of them were meritorious at that time.

The court then turned to the defendant's breach of fiduciary duty defense and made the following findings relevant to this appeal. "The nature and chronology of the underlying loan transactions raise questions about whether Harp's conduct in connection with those loans [was] consistent with his fiduciary duties to [the defendant]. . . . There is no reason to believe, on the present state of the record, that [the defendant] was aware of any aspect of the [Muni] loan or the associated Court Hill notes—all of the documentation was signed on behalf of the Court Hill partnerships by Harp alone." (Citations omitted.)

The court then noted that it did not have sufficient information to determine the ultimate strength of the breach of fiduciary duty defense and noted several unanswered questions including, "[w]hether the putative debts to Harp and Renaissance, underlying the Court Hill notes at issue here, were actually owed by the Court Hill partnerships to Harp and/or Renaissance at the time the Court Hill notes were issued; whether Harp had anything to do, directly or indirectly, explicitly or implicitly, with [the defendant's] current predicament as the lone obligor from whom payment is being sought, and if so, whether Harp's acts or omissions in that regard breached his fiduciary duties to [the defendant]; and whether the various loans and purchase transactions spanning the years between 2008 and 2012 involving Harp, [Muni] and the various [Muni] affiliates have resulted in financial consequences that were foreseeably disadvantageous or unequal among Harp's partners, and cannot be squared with Harp's fiduciary duties to his partners and partnerships."

In light of these questions, the court stated that it had "no idea, on this record, about [the defendant's] role in any of the underlying business activity involving [Muni], nor do we know how the extensive transactions between Harp and [Muni] may have interacted, in whole or in part, with other transactions between or among the Court Hill partners, including [the defendant]." After noting that there still may be other questions that need to be resolved before the merits of the case could be decided, the court stated that "[t]he important point is that, in the court's mind, too little is known presently

for any prediction to be made regarding the ultimate fate of the fiduciary duty defense. . . . The current record does not reveal whether the fiduciary duty defense has merit. The only certainty at this time, based upon the limited facts known to the court, is that legitimate questions have been raised under the circumstances."

The court concluded by granting the plaintiff's application, but only for $1 million, rather than the $3 million requested. The court did not explain how it arrived at this number other than to say that "[t]his amount represents the court's best effort, on the present record, to account for all of the factors discussed above." The defendant now appeals.

On appeal, the defendant argues that "in its application for a prejudgment remedy, [the plaintiff] was obligated to prove that there is probable cause to believe that [it] can establish, by clear and convincing evidence at trial, that the transactions at issue were fair. Indeed, in considering whether there is the requisite degree of probable cause . . . the trial court must have evaluated any and all claims *and defenses* in light of this higher standard proof." (Emphasis in original.) The defendant argues that the trial court's decision demonstrates that the court did not find probable cause under this heightened standard, and, in fact, that it specifically did not find probable cause. He also argues that there was no evidence in the record to demonstrate fair dealing.

In response, the plaintiff argues: "After conducting a full hearing and reviewing extensive briefs, the trial court issued [an] attachment, in an amount less than one-third of what [the] plaintiff had requested. Although he did not present any evidence in support of [his] breach of fiduciary duty and failure of consideration defenses . . . [the defendant] claims in this appeal that the attachment should be set aside because the court did not impose upon [the] plaintiff the burden of disproving [the defendant's] defenses." The plaintiff contends that the court's decision was not clear error regardless of who had the burden at the hearing. After fully considering the record in this case, we agree with the defendant that the court's written decision demonstrates that it did not find probable cause to believe that the plaintiff could meet its shifted burden of proof with regard to the breach of fiduciary duty defense. Accordingly, we find clear error.

"A prejudgment remedy means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment . . . . General Statutes § 52-278a (d). A prejudgment remedy is available upon a finding by the court that there is

probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, *taking into account any defenses*, counterclaims or setoffs, *will be rendered in the matter in favor of the plaintiff* . . . . General Statutes § 52-278d (a) (1). . . .

"As for [the] standard of review [on appeal], [an appellate] court's role on review of the granting of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses." (Emphasis added; internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, 137 Conn. App. 359, 369–70, 48 A.3d 705, cert. denied, 307 Conn. 916, 54 A.3d 180 (2012). "We will not upset a prejudgment remedy order in the absence of clear error . . . viewing the evidence in the light most favorable to the plaintiff." (Citation omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 339, 71 A.3d 492 (2013).

"Section 52-278d (a) explicitly requires that a trial court's determination of probable cause in granting a prejudgment remedy include the court's 'taking into account any defenses, counterclaims or [setoffs] . . . .' " (Emphasis omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 141, 943 A.2d 406 (2008). "Therefore, it is well settled that, in determining whether to grant a prejudgment remedy, the trial court must evaluate both parties' evidence as well as any defenses, counterclaims and setoffs. . . . Such consideration is significant because *a valid defense has the ability to defeat a finding of probable cause*." (Citation omitted; emphasis added.) Id.; see also *Augeri* v. *C. F. Wooding Co.*, 173 Conn. 426, 429, 378 A.2d 538 (1977) ("at a prejudgment remedy hearing a good defense . . . will be enough to show that there is no 'probable cause that judgment will be rendered in the matter in favor of the plaintiff' ").

In the present case, the defendant contends that, because it raised a breach of fiduciary duty defense, and the court found that Harp owed a fiduciary duty to the defendant and Court Hill, and because the court is required by § 52-278d (a) to consider probable cause in light of this defense before granting a prejudgment remedy, the plaintiff was required to establish probable cause that the dealings underlying its cause of action were fair.[6] He contends that the court's ultimate conclusions that it "[did] not have sufficient information . . .

to assess the ultimate strength of [the] . . . fiduciary duty defense" and could not make "any prediction . . . regarding the ultimate fate of the fiduciary duty defense" demonstrate that the court committed clear error by issuing a prejudgment remedy when it did not find probable cause to believe that the plaintiff would be successful in meeting its shifted burden of proof on the breach of fiduciary duty defense. Furthermore, during oral argument before this court, the defendant repeatedly argued that the plaintiff could meet its burden at the prejudgment remedy hearing only by producing clear and convincing evidence of fair dealing. We agree with the defendant's conclusion, but not its representations as to the plaintiff's burden of proof on an application for a prejudgment remedy.

The defendant correctly points out that when a defendant asserts a defense of breach of fiduciary duty, it bears the burden of proving the existence of a relationship from which the fiduciary duty arises. "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . This means that the plaintiff had the burden to prove that [it] had dealt fairly with the [defendant]." (Citation omitted; internal quotation marks omitted.) *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 219, 635 A.2d 798 (1994). "Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of proof of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Internal quotation marks omitted.) Id., 229–30.

Here, as the court found, and the parties do not dispute, Harp owed a fiduciary duty to Court Hill and the defendant; it also is undisputed that the plaintiff stands in the shoes of Harp and, therefore, has the burden of proving the fairness of the transactions between Harp, Renaissance, and Court Hill. See footnote 6 of this opinion. We, therefore, agree with the defendant that the plaintiff had the burden at the prejudgment remedy hearing to establish probable cause that it could prove the fairness of the transactions, just as it had the burden to establish probable cause that it could prove the other essential elements of its claims. Where we disagree with the defendant, however, is in his assertion at oral argument that the plaintiff was obligated at the prejudgment remedy stage to prove the fairness of the transactions by clear and convincing evidence. Although that is the standard of proof that the plaintiff must meet at trial, the law is clear that the standard of proof for a prejudgment remedy is lower than the standard that a plaintiff must meet to prevail at trial. See generally *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, supra, 137 Conn. App. 370.

For example, although the usual civil burden a plain-

tiff must meet at trial is proof by a preponderance of the evidence, that is not the standard for the granting of a prejudgment remedy. The standard for a prejudgment remedy is instead the lower probable cause standard. See id. ("[p]roof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence" [internal quotation marks omitted]). We see no reason why that same standard should not similarly apply in a case where the plaintiff has to meet a higher burden of proof, for example, clear and convincing evidence, at trial.

Nevertheless, a trial court should consider the requisite burden that the plaintiff must prove at trial when determining whether the plaintiff has demonstrated probable cause. As our Supreme Court has stated, "probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Emphasis in original; internal quotation marks omitted.) *Three S. Development Co.* v. *Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984). The burden of proof the plaintiff faces at trial necessarily will affect how the trial court views whether there is a bona fide reason to believe the plaintiff could prevail. Where the plaintiff's burden at trial is proof by clear and convincing evidence, the task for the trial court in ruling on a prejudgment remedy is to determine whether, in the exercise of ordinary caution, prudence and judgment, it believes, based on the evidence presented, that the plaintiff can meet that burden at trial. Put another way, although the plaintiff does not have to prove its case by clear and convincing evidence at the prejudgment remedy hearing, it, nonetheless, must present sufficient evidence to lead the court to conclude that it could do so at trial.[7] See *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, supra, 137 Conn. App. 370 ("the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits" [internal quotation marks omitted]).

Here, the court did not conduct such an analysis. In fact, it does not appear that the court placed any burden whatsoever on the plaintiff to prove, by any standard, that there was probable cause to believe that the transactions at issue were conducted fairly. The only finding of probable cause made by the court was its conclusion "that there is probable cause to sustain the validity of [the] plaintiff's claim on the promissory notes at issue. . . . They are in default, all conditions precedent have been satisfied or waived, and [the] plaintiff is entitled to obtain payment *absent a valid defense*." (Emphasis added.)

After rejecting the defendant's other defenses as lacking merit, the court went on to explain: "The breach of

fiduciary [duty] defense is not a trivial one, and will require further litigation before its merits can be assessed in the full light of day. The nature and chronology of the underlying loan transactions raise questions about whether Harp's conduct . . . [was] consistent with his fiduciary duties to [the defendant]. . . . There is no reason to believe, on the present state of the record, that [the defendant] was aware of any aspect of the [Muni] loan or the associated Court Hill notes . . . ." (Citation omitted.) The court then stated: "Again, the court does not have sufficient information at this point to assess the ultimate strength of [the defendant's] breach of fiduciary duty defense. . . . The court also has no idea, on this record, about [the defendant's] role in any of the underlying business activity involving [Muni], nor do we know how the extensive transactions between Harp and [Muni] may have interacted, in whole or in part, with other transactions between or among the Court Hill partners, including [the defendant]. . . . The important point is that, in the court's mind, too little is known presently for any prediction to be made regarding the ultimate fate of the fiduciary duty defense. . . . The only certainty at this time, based on the limited facts known to the court, is that legitimate questions have been raised under the circumstances."

From the court's discussion, it is clear that the court made no finding that the plaintiff had established probable cause as to the fairness of the transactions at issue. It merely stated that it could not make "any prediction . . . regarding the ultimate fate of the fiduciary duty defense." Such a finding, without more, should have led to a conclusion that the plaintiff had failed to meet its burden, and should have resulted in the denial of the prejudgment remedy. Instead, by granting the prejudgment remedy in the absence of any finding that the plaintiff had met its burden, it appears that the court improperly placed the burden of proving the unfairness of the transactions on the defendant.

The plaintiff argues that the trial court clearly considered the breach of fiduciary duty defense in its decision because that was the only basis for reducing the plaintiff's prejudgment remedy from the $3 million it requested to $1 million. There is no question that the court's concerns about whether Harp violated his fiduciary duty to the defendant affected the size of the prejudgment remedy awarded. In fact, the court stated that the "amount [of the prejudgment remedy] represents the court's best effort, on the present record, to account for all of the factors discussed above." The problem is that a prejudgment remedy in any amount required that the plaintiff establish probable cause that it could prove that the transactions were fair and thereby defeat the defendant's breach of fiduciary duty defense. Yet, the trial court made no such finding. Instead, the court found that the breach of fiduciary

duty defense was not trivial, raised several unanswered questions, and left the court with an inability to make any prediction as to the outcome of the defense. Such findings are contrary to a conclusion that a party has met its burden to establish probable cause.

The plaintiff also argues that there was sufficient evidence in the record to support a finding that it met any burden it might have had to establish probable cause for the fairness of the transactions. In particular, the plaintiff points to the testimony of Matthew Harp, the current president of Renaissance. Matthew Harp testified to his understanding that the defendant had been kept informed of the basis for the Court Hill notes and had been provided with documents regarding Court Hill's obligations to Renaissance. This argument cannot be squared though with the court's specific finding that "[t]here is no reason to believe, on the present state of the record, that [the defendant] was aware of any aspect of the [Muni] loan or the associated Court Hill notes." That the court made a finding that contradicts the primary evidence that the plaintiff argues established probable cause further confirms that there was no basis for a finding of probable cause and the court never made one.

We conclude that the plaintiff was required to present evidence to establish probable cause to believe that (1) the plaintiff would be successful on the merits of its cause of action *and* (2) the plaintiff engaged in fair dealing in the matters on which its cause of action is based. The trial court then was required to assess whether such probable cause existed before granting a prejudgment remedy. We further conclude, on the basis of the record, that although the court made the requisite finding of probable cause to sustain the merits of the underlying action *before* taking into consideration the defense of breach of fiduciary duty, the trial court thereafter did not make the requisite finding that there was probable cause to believe that the plaintiff would overcome that defense by demonstrating that it had engaged in fair dealing. Because the plaintiff bears the burden of proof on this issue, the failure to make such a finding has the same effect as if the court failed to find probable cause as to an essential element of the plaintiff's breach of contract claim, for example, the existence of the notes. There is clear error.

The judgment granting the prejudgment remedy in the amount of $1 million is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] We view the facts in a light most favorable to the plaintiff. See *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 339, 71 A.3d 492 (2013) (on appeal, "[w]e will not upset a prejudgment remedy order in the absence of clear error . . . viewing the evidence in the light most favorable to the plaintiff" [citation omitted]).

[2] By the time of the hearing on the prejudgment remedy application, Harp was deceased.

³ The amended and restated promissory note provided that it was "given in substitution for (but not in satisfaction of) a [p]romissory [n]ote of [m]aker to [l]ender in the original principal amount of [$2,007,820] dated on or about August 1, 2008." It does not appear, however, that the August 1, 2008 note was submitted into evidence at the hearing.

⁴ These two December 24, 2008 amended and restated promissory notes collectively are referred to as the Court Hill notes.

⁵ The defendant's request to file an amended answer and special defenses was filed on March 18, 2016, slightly more than two weeks after the prejudgment remedy hearing. The plaintiff filed an objection to the defendant's request, arguing that it would cause undue delay. The court granted the request and overruled the objection on June 7, 2016, the same day it granted the plaintiff's application for a prejudgment remedy. The plaintiff did not have an opportunity to file a reply to the amended special defenses before the court rendered judgment, but it had filed a general denial in response to the previous special defenses raised by the defendant. Regardless of when the amended answer actually was filed, the record is clear that the defendant presented each of the defenses in opposition to the plaintiff's application for a prejudgment remedy, and the court considered each of them.

⁶ The court found, and the parties do not dispute, that the plaintiff, having acquired the Court Hill collateral notes after the notes were in default, is not a holder in due course under General Statutes § 42a-3-302 (a), and that the plaintiff is subject to any personal defenses that the defendant could have asserted against Harp and Renaissance. The parties also agree that the plaintiff stands in Harp's shoes and owes a fiduciary duty to the defendant.

⁷ We note that this test is consistent with the formulation of the burden of proof set forth by the defendant in his appellate brief. It is unclear to us why the defendant argued for a higher burden during oral argument before this court. But, because of this contention during oral argument, we conclude that it is necessary that we address this argument in our opinion.