LARRY D. SPECTOR, TRUSTEE *v.* SIMON
KONOVER ET AL.
(AC 17904)

O'Connell, C. J., and Foti and Spear, Js.[1]

to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 30, 1999—officially released March 28, 2000

*William F. Gallagher*, with whom were *Richard J. Pascal* and, on the brief, *Amy M. Stone*, for the appellant (plaintiff).

*Wesley W. Horton*, with whom were *Robert A. Randich* and, on the brief, *Bageshree Ranade Blasius*, certified legal intern, for the appellees (defendants).

*Opinion*

FOTI, J. The plaintiff, Larry D. Spector, trustee, appeals from the judgment of the trial court rendered for the defendants. The plaintiff claims that the court

improperly concluded that the defendants[2] met their burden of proving that they did not breach their fiduciary duty to the plaintiff.[3] The plaintiff further argues that the court improperly concluded that the plaintiff is not entitled to damages caused by the defendants' breach of their fiduciary duty. Because we find that the defendants did violate their fiduciary duty to the plaintiff, we reverse the judgment of the trial court.[4]

The following facts are relevant to the resolution of this appeal. The plaintiff is the successor in interest to Martin Spector, one of four individuals[5] who reached an oral agreement in 1961 to build a shopping center in Seymour. In 1961, Martin Spector and Abner Rosenberg executed a lease of land in Seymour, and then approached Marvin Patron and the named defendant Simon Konover to build a shopping plaza on the land. While no written partnership agreement was drafted, the four orally formed Tri Town Realty Co. (Tri Town), a general partnership in which each partner received a 25 percent interest. In return for their respective shares in the partnership, Martin Spector and Rosenberg contributed the land lease, while Patron and Konover were charged with building, operating and managing the shopping plaza.

---

[2] The defendants are Simon Konover and his real estate management corporation, Konover Management Corporation.

[3] The plaintiff challenges the trial court's finding that the defendants did not violate their fiduciary duty to the plaintiff by (1) diverting partnership funds to other entities owned by the defendants, (2) delaying disbursements of profits earned by the partnership and (3) charging the partnership fees for management services provided by the defendants.

[4] In addition to responding to the arguments raised by the plaintiff on appeal, the defendants raise, as an alternative basis for affirming the judgment of the court, the argument that the plaintiff released the defendants from liability. The defendants asserted this as a special defense at trial, but the court made no findings regarding this issue, and the defendants did not request an articulation as to this special defense. Because the record is inadequate for our review, we will not address this issue.

[5] Three of the four individuals now are deceased. The defendant Simon Konover is the only surviving partner.

Konover and Patron initially managed the shopping plaza themselves, charging the partnership for any out-of-pocket expenses they incurred. Over time, as Konover and Patron amassed twenty or thirty shopping centers, they formed K and P Management Company. K and P Management Company hired managers and leasing agents to manage all of Konover's and Patron's properties, and charged management fees and leasing commissions to all of their properties, including Tri Town. Eventually, K and P Management Company was replaced by the defendant Konover Management Corporation, which managed the Tri Town plaza for the last ten years of the partnership.

Konover's duties in managing Tri Town included the preparation and distribution of monthly reports to each of the partners. In the early 1980s, the plaintiff[6] resolved to take a greater interest in monitoring the partnership because he felt that Konover's reports did not adequately explain the finances of the partnership. The plaintiff also was concerned about the minimum distributions that were being made to each partner. The defendants apparently determined the amount of money that was to be distributed to the partners as profit, and the plaintiff felt that the amount being distributed was too low. In fact, the plaintiff claimed that because the partnership was showing significant income but was distributing relatively little to the partners, the trust was developing a tax burden that it could not pay.

In June, 1985, the plaintiff made his first written request, through counsel, for an increase in the distributions. In September, 1985, Konover increased the distributions from $500 per month to $1200 per month. In February, 1989, the plaintiff again wrote to Konover. This time, the plaintiff requested an increase in the distribution of profits and an explanation of various

---

[6] Martin Spector died in 1974, leaving a trust that was managed by his son, the plaintiff, Larry D. Spector.

expenses appearing on the monthly report. The plaintiff further requested an explanation as to why the trust was not receiving any interest earned on partnership funds. The plaintiff did not receive a response from Konover and, in May, 1989, the plaintiff hired counsel in his home state of Arizona,[7] who wrote a letter to Konover, demanding that the partnership be terminated. The plaintiff received no response to this demand.

In April, 1990, the defendants stopped making profit distributions to the plaintiff. The defendants' purported reason for withholding disbursements was that Ames department store, one of Tri Town plaza's largest tenants, had declared bankruptcy. The defendants claimed that they needed to create a buffer reserve of cash to meet any expenses created by Ames' bankruptcy and the potential closing of Ames' Tri Town store.

According to testimony and exhibits admitted at trial, the plaintiff in 1994 hired a certified public accountant to review the financial records of the partnership. The accountant's review revealed that the defendants did not maintain any account dedicated solely to the Tri Town partnership. Rather, the Tri Town partnership funds were commingled with funds from several other Konover entities, and all the funds were commingled in one account called the K and R Associates Trust Fund (K and R). The accountant further discovered that not only were the funds commingled in one account, but the Tri Town funds were actually being diverted to and used by other properties owned by Konover. Even though Tri Town funds supposedly were kept in the K and R checking account, the balance of the entire K and R account actually was far less than the amount purported to be in the Tri Town partnership account.[8]

---

[7] The plaintiff originally brought an action in Arizona in 1990 to dissolve the partnership, but the action was dismissed for lack of personal jurisdiction.

[8] For example, the Tri Town partnership balance, as reflected by the company's general ledger for December 31, 1993, and on the partnership's 1993 tax return, was $378,302. The *total* cash balance of the K and R checking account, which contained funds from the Tri Town partnership as well as

Additionally, interest earned on Tri Town funds was not credited to Tri Town's account and was not distributed to the individual Tri Town partners.

At trial, Konover admitted to diverting funds between his various entities. He and several of his employees testified that by sharing the funds in the K and R account, the defendants could use one property's funds to cover expenses incurred by another property. For instance, if one property needed repairs but did not have enough cash to pay for the repairs, the defendants would use cash from another property to pay for those repairs. It was, therefore, advantageous for the defendants to commingle the funds of different Konover entities so that one property's funds could be used to cover an overdraft of another entity.

The Tri Town partnership was terminated in 1994, with the plaintiff receiving his 25 percent share of the partnership's cash balance. The plaintiff then purchased the remaining 75 percent interest in the Tri Town plaza. On October 31, 1995, the plaintiff filed the action that is the subject of this appeal, seeking damages stemming from the defendants' breaches of their fiduciary duties in managing the Tri Town partnership. The court found that the defendants did in fact owe the plaintiff a fiduciary duty, but that they proved by clear and convincing evidence that they dealt with the plaintiff fairly and that they breached no fiduciary duty. We disagree.

I

The plaintiff argues that the court improperly determined that the defendants did not breach their fiduciary duties to the plaintiff. This claim is subject to a clearly erroneous standard of review. "A finding of fact is

sixteen other Konover owned properties, was, however, only $2220. Also, Tri Town's reported balance on December 31, 1992, was $463,877, while the actual balance of the K and R checking account was only $153,801. Again, the K and R checking account purportedly contained the funds of the Tri Town partnership as well as sixteen other properties.

clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . *State* v. *Hodge*, 248 Conn. 207, 218–24, 726 A.2d 531 (1999)." (Internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 660, 735 A.2d 267 (1999).

In determining whether the court's decision was clearly erroneous, we must examine the court's decision in the context of the heightened standard of proof imposed on a fiduciary. It is undisputed that the plaintiff and Konover were partners. Our Supreme Court has recognized that partners are generally "bound in a fiduciary relationship and act as trustees toward each other and toward the partnership." (Internal quotation marks omitted.) *Oakhill Associates* v. *D'Amato*, 228 Conn. 723, 727, 638 A.2d 31 (1994). "Proof of a fiduciary relationship imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence. Once a fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of proof of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Internal quotation marks omitted.) *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 229–30, 635 A.2d 798 (1994). We therefore must determine whether the court was clearly erroneous in determining that the defendants proved fair dealing by clear and convincing evidence.

## A

The defendants' practice of diverting Tri Town funds to other entities and retaining interest earned on Tri

Town partnership funds constitutes a breach of fiduciary duty. Our Supreme Court has stated that "[i]t is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. . . . The rule applies alike to agents, *partners*, guardians, executors and administrators." (Emphasis added; internal quotation marks omitted.) *Murphy* v. *Wakelee*, 247 Conn. 396, 401–402, 721 A.2d 1181 (1998), quoting *State* v. *Culhane*, 78 Conn. 622, 628, 63 A. 636 (1906).

The defendants' misuse of partnership property is a clear case of self-dealing and a violation of their fiduciary duty to the plaintiff. As managing partner, Konover held a unique position of responsibility within the partnership. The plaintiff trusted the defendants to act in the best interest of the partnership. Instead, the defendants used partnership funds to finance other entities owned by Konover and retained interest generated by Tri Town funds. This misuse of partnership funds for Konover's personal financial gain clearly constitutes a breach of fiduciary duty.

The defendants claim that because the plaintiff and Konover were parties to a sophisticated business venture, a more relaxed fiduciary duty applies. The defendants point to *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 228, which held that in certain circumstances a fiduciary may demonstrate that a particular transaction is fair by showing (1) that the fiduciary made a free and frank disclosure of all the relevant information he had, (2) that the consideration was adequate, (3) that the principal had competent and indepen-

dent advice before completing that transaction, and (4) the relative sophistication and bargaining power among the parties.

The *Zeller* standard effectively preserves the heightened standards required of fiduciaries while allowing parties in a fiduciary relationship the flexibility to contract freely among themselves. The standard articulated in *Zeller* is most appropriately applied in situations where a principal challenges the fairness of a particular transaction in which both the principal and the fiduciary made a fully informed decision to act in a manner that is seemingly contrary to the normal fiduciary relationship. Implicit in the *Zeller* standard is the requirement that the principal consent to the transaction carried out by the fiduciary. To invoke the *Zeller* standard in an attempt to justify the fairness of a particular transaction, the fiduciary must first be able to show that there was some agreement among the parties allowing the fiduciary to act in a manner that may otherwise be a breach of fiduciary duty.

In the present case, there was no evidence of an explicit agreement allowing the defendants to use partnership property for Konover's personal gain. There also is no evidence of an explicit agreement granting Konover the right to retain interest earned on partnership funds. On the contrary, the plaintiff's 1989 letter, in which he requested an explanation as to why interest was not appearing on the financial reports, demonstrates that the plaintiff never agreed to give Konover exclusive rights to interest earned on partnership funds.

Furthermore, even under the *Zeller* standard, the defendants breached their fiduciary duty by not making a free and frank disclosure of all the relevant information. In fact, the defendants provided the plaintiff with misleading information. For example, the defendants issued the plaintiff a financial report indicating that

there was $378,302 in Tri Town's account on December 31, 1993, while the actual account held only $2220.

There also is no evidence indicating that the defendants made a free and frank disclosure as to Konover's appropriation of interest earnings. Konover claimed that by being more than just a manager of the Tri Town plaza, he was entitled to retain the interest earned by partnership funds. In the absence of an explicit agreement granting him this right, however, Konover's actions constituted a breach of his fiduciary duty to the plaintiff.[9]

B

The plaintiff also claims that the defendants' commingling scheme affected their decisions regarding the disbursement of profits to the Tri Town partners. We agree with the plaintiff and conclude that the defendants' failure to make greater distributions of profits was a breach of their fiduciary duty.

As noted previously, the defendants stopped making profit distributions to the plaintiff in April, 1990. The defendants' proffered reason for withholding disbursements was that they wanted to create a large cash reserve to cover any expenses that might have arisen from the bankruptcy of one of their largest tenants, Ames. According to the facts presented at trial, however, the defendants did not actually maintain a reserve account dedicated to potential expenses related to Ames' bankruptcy. Rather, the defendants continued their practice of diverting Tri Town funds to cover the

[9] The defendants also argue that during the early years of the partnership, Konover personally covered Tri Town partnership expenses with interest free loans. This, according to Konover, justified his policy of retaining any interest earned by partnership funds. While Konover may have viewed the partnership as a casual "give and take" relationship, his retention of partnership assets, absent any explicit agreement, was a breach of his fiduciary duty.

expenses of other Konover properties.[10] From the record, it is clear that the defendants' decision to withhold the disbursement of profits from the plaintiff was, at least in part, motivated by their desire to use Tri Town funds to finance other Konover entities. This, too, was a breach of the defendants' fiduciary duty to the plaintiff.

C

The plaintiff also claims that the defendants breached their fiduciary duty by billing the Tri Town partnership for management fees, leasing commissions, payroll maintenance fees and undisclosed overhead charges included in Tri Town's insurance premiums. We agree.

Even under the *Zeller* standard, the defendants breached their fiduciary duty to the plaintiff. As noted previously, one of the factors to consider in determining whether a particular transaction is fair is whether "the principal had competent and independent advice before completing that transaction." (Internal quotation marks omitted.) Id. Implicit in this factor is the idea that the principal must consent to the transaction. With regard to the management fees and leasing commissions that the defendants charged the partnership, the court found that there never were any meetings or partnership votes giving the defendants the right to receive such compensation. In the absence of any agreement to the contrary, the defendants were not entitled to any compensation, other than reimbursement for out-of-pocket expenses, for managing Tri Town. See General Statutes § 34-335.[11]

---

[10] See footnote 6 for examples of the amounts maintained in "Tri Town's account" during the time that the defendants were supposedly creating a large reserve to prepare for Ames' possible departure from the plaza.

[11] General Statutes § 34-335 (c) provides that a partner is to be reimbursed for out-of-pocket partnership expenses. General Statutes § 34-335 (h) provides in relevant part that "[a] partner is not entitled to remuneration for services performed for the partnership . . . ."

Even after the plaintiff complained to Konover about the management fees, the defendants began charging the partnership an additional "payroll maintenance fee." These new fees were clearly not authorized by the plaintiff. Additionally, the insurance premiums charged to Tri Town included undisclosed overhead costs that were paid to another Konover entity. Thus, the defendants did not make a "free and frank disclosure of all the relevant information . . . ." (Internal quotation marks omitted.) *Konover Development Corp.* v. *Zeller*, supra, 238 Conn. 228.

Konover, without the formal consent of his partners, compensated himself for managing Tri Town. The defendants also added hidden charges to the insurance premiums charged to Tri Town. These acts of self-dealing were in breach of the defendants' fiduciary duty. Thus, we conclude that the trial court's finding that the defendants proved fair dealing by clear and convincing evidence was clearly erroneous. See id., 229–30.

II

The defendants' breaches of their fiduciary duty to the plaintiff entitle the plaintiff to damages, including the reimbursement of any improper fees and charges, interest for the loss of use of profits, and a constructive trust over the profits the defendants received through improper use of partnership funds. Additionally, we conclude that the defendants' actions constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; accordingly, the plaintiff also is entitled to damages provided under that act.

A

Our general standards governing the imposition of a constructive trust are well established. "[A] constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by

duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . Moreover, the party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff." (Citations omitted; internal quotation marks omitted.) *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 113–14, 680 A.2d 1314 (1996). The defendants wrongfully retained interest generated by partnership funds and secretly used partnership assets to finance other Konover owned properties. The defendants were unjustly enriched through their misuse of Tri Town assets, and a constructive trust is an appropriate remedy.

### B

The plaintiff further claims that the defendants' conduct amounts to a violation of CUTPA. CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." General Statutes § 42-110g (a). Although CUTPA does not apply to purely intracorporate conflicts,[12] our Supreme Court has stated that CUTPA does apply where one's actions go "well beyond governance of the [partnership], and [place] him in direct competition with the interests of the [partnership]." *Fink* v. *Golenbock*, 238 Conn. 183, 213, 680 A.2d 1243 (1996). Here, the defendants diverted partnership funds to benefit other Konover owned properties. The defendants delayed the disbursement of Tri Town profits to the plaintiff so that those funds could be used to finance Konover's other entities. Those actions

---

[12] *Ostrowski* v. *Avery*, 243 Conn. 355, 379, 703 A.2d 117 (1997).

clearly placed the defendants in direct competition with the interests of the Tri Town partnership and are, therefore, a violation of CUTPA.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff and for further proceedings to determine damages consistent with this opinion.

In this opinion the other judges concurred.