******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ASPIC, LLC *v.* BRACK G. POITIER
(AC 42495)

Prescott, Bright and Moll, Js.*

*Syllabus*

The plaintiff, a single member limited liability company, sought to recover
monetary damages from the defendant, a general partner in four limited
partnerships, for default on promissory notes that had been executed
by H, the managing general partner of the limited partnerships, and the
plaintiff's predecessor in interest. Before the trial court, the defendant
raised several special defenses, including that the plaintiff was barred
from recovery because H breached his fiduciary duties to the defendant,
who was H's general partner in the limited partnerships. The defendant
alleged that H, without providing him any notice, executed certain notes
on behalf of the limited partnerships for H's own benefit, entered into
another note using the original notes as collateral, and sold real property
assets of the limited partnerships to entities controlled by H's son or
an affiliate of the plaintiff for inadequate consideration. Following a
trial, the court rendered judgment in favor of the defendant on his
special defense of breach of fiduciary duty, and the plaintiff appealed
to this court. *Held*:

1. This court concluded that the trial court's finding that H failed to disclose
   to the defendant all relevant information related to the note transactions
   was not clearly erroneous, and this failure constituted a breach of fidu-
   ciary duty that precluded enforcement of the notes against the defendant.
   a. The plaintiff could not prevail on its claim that the trial court could
   not have reasonably found that the defendant lacked notice of the notes,
   there being no evidence that the defendant was aware of their execution:
   the record did not reflect that, prior to executing certain of the notes,
   H ever communicated to the defendant that he intended, as the managing
   general partner of the limited partnerships, to issue promissory notes
   to himself and another company, R Co., memorializing the amounts he
   claimed were owed by the limited partnerships; moreover, the evidence
   the plaintiff pointed to that allegedly showed a free and frank disclosure
   of relevant information, certain letters of correspondence and audited
   financial statements, fell short of clear and convincing evidence of fair
   dealing, and, by issuing the notes, H circumvented the contractual limits
   of liability for obligations arising under the management agreement and
   converted a nonrecourse debt obligation into a recourse debt obligation;
   furthermore, the mere fact that certain partnership agreements author-
   ized H to execute the notes, coupled with the defendant's knowledge of
   debts owed to H and R Co. and of H's contemplation of a potential loan
   transaction, did not relieve H of his fiduciary duty to disclose to the
   defendant all relevant information specific to the notes; accordingly, H's
   fiduciary duty was not simply to inform the defendant that the limited
   partnerships were in debt, but, rather, to keep the defendant apprised
   of the details of the limited partnerships' repayment plans, especially
   when those plans implicated the defendant to the extent they did here.
   b. The trial court did not err in failing to address the relevant factors under
   *Konover Development Corp.* v. *Zeller* (228 Conn. 206), which outlines,
   in certain circumstances involving sophisticated business ventures, how
   a fiduciary demonstrates that a particular transaction is fair: in light of
   this court's conclusion that H failed to disclose all relevant information
   regarding the notes, the other *Zeller* factors could not outweigh, as a
   matter of law, the failure to make a free and frank disclosure, as a party
   cannot have competent and independent advice about a transaction as
   to which there has not been a free and frank disclosure of all relevant
   information, and a party's level of sophistication to understand a transac-
   tion is of little value if the party does not know about the transaction;
   moreover, adequate consideration is a necessary, not sufficient, condition
   to establish fair dealing, as although the lack of adequate consideration
   may lead to a conclusion that a fully disclosed transaction nevertheless
   constitutes a breach of fiduciary duty, adequate consideration alone will
   not establish fair dealing as to a transaction that was not fully disclosed

to the principal and to which the principal did not agree.

c. The plaintiff could not prevail on its claim that the trial court, in reaching the conclusion that H breached his fiduciary duty to the defendant, committed a number of legal errors that required reversal: the plaintiff misconstrued the import of the court's conclusion and minimized the central finding of the court that H failed to disclose to the defendant that he was converting his accounts receivable claims against the limited partnerships into promissory notes that he then would use to secure loans for himself and R Co., as the court's reference to the sale of the limited partnerships' real property assets was not the basis for its conclusion that H breached his fiduciary duty to the defendant, but that H's breach of fiduciary duty occurred much earlier when he endorsed the notes over to himself and/or R Co.; moreover, it was not just that H benefitted from the transaction, but that he did so without making the necessary free and frank disclosure of all relevant information to the defendant; accordingly, the plaintiff could not exclude from the court's analysis its key finding, which was not clearly erroneous, that H failed to disclose all relevant information relating to the notes, and the failure to make a free and frank disclosure of all the information regarding the transactions, which unquestionably personally benefited H to the detriment of the defendant, was fatal to the plaintiff's claims of legal error.

2. The plaintiff's claim that the trial court improperly rendered judgment for the defendant on the notes issued to R Co., even though it concluded that R Co. had not breached any fiduciary duty it owed to the defendant, was without merit; the court rejected the special defense that R Co. breached its fiduciary duty to the defendant because R Co. owed no fiduciary duty to the defendant, and, nonetheless, the transaction by which it received promissory notes from the limited partnerships was orchestrated by H, for his own benefit and without making a free and frank disclosure to the defendant, and the plaintiff, standing in H's shoes, could not avoid the effects of H's breach of fiduciary duty simply because H created an obligation to a third party he controlled instead of a direct obligation to himself.

Argued December 11, 2019—officially released November 23, 2021

*Procedural History*

Action to collect on promissory notes, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Ecker, J.*, granted the plaintiff's application for a prejudgment remedy, and the defendant appealed to this court, *Alvord, Bright* and *Sullivan, Js.*, which reversed the decision and remanded the case for further proceedings; thereafter, the matter was tried to the court, *S. Richards, J.*; judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Timothy A. Diemand*, with whom were *Jeffrey R. Babbin* and *Richard Luedeman*, for the appellant (plaintiff).

*Matthew T. Wax-Krell*, with whom were *Mark A. Rosenblum*, and, on the brief, *Michael D. Blumberg*, for the appellee (defendant).

*Opinion*

BRIGHT, J. In this debt collection action, the plaintiff, ASPIC, LLC, appeals from the judgment of the trial court rendered in favor of the defendant, Brack G. Poitier. The plaintiff claims that the court erred in concluding that it cannot hold the defendant personally liable for amounts due on promissory notes entered into by the plaintiff's predecessor in interest, Wendell Harp, because Harp breached his fiduciary duties to the defendant, who was Harp's general partner in certain limited partnerships. We disagree and, accordingly, affirm the judgment of the court.

This case returns to us after our decision in *ASPIC, LLC* v. *Poitier*, 179 Conn. App. 631, 181 A.3d 593 (2018) (*ASPIC*). This court reversed the judgment of the trial court, *Ecker, J.*, granting a prejudgment remedy in the amount of $1 million in favor of the plaintiff.[1] Id., 633. Following our remand for further proceedings, the case was tried to the court, *S. Richards, J.*, on March 20, 2018.

The following facts, which are either undisputed or were found by the trial court, are relevant to this appeal. "The plaintiff is a single member limited liability company, whose sole member is Municipal Capital Appreciation Partners III, L.P. (Muni). The defendant is a general partner in four limited partnerships, GAB Hill Limited Partnership [(GAB)], BHP Limited Partnership [(BHP)], WCH Limited Partnership [(WCH)], and Renaissance [Hill] Limited Partnership [(Renaissance Hill)]. These partnerships collectively are known as the Court Hill Partnerships (Court Hill). The partnership agreements provide that each general partner has unlimited personal liability for all obligations of the partnerships. Court Hill owns properties that served low income individuals in the New Haven area. In addition to the defendant, George Bumbray and . . . Harp[2] also are general partners in Court Hill, with Harp having been appointed as the managing partner. Harp's company, Renaissance Management Company, Inc. (Renaissance [Management]), acts as the managing agent for all of the properties owned by Court Hill." (Footnote in original.) *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 634.

"[Renaissance Management] handled all of the day-to-day tenant and operational needs of Court Hill's rental properties including, but not limited to, paying Court Hill's tax liabilities, complying with its annual housing audit requirements, screening tenants, overseeing property leasing and rent collection, performing routine maintenance work, managing federal and state regulations and performing routine maintenance work on the units, elevators, [and] roofs along with other capital improvements. For years, Court Hill's independent auditors' report noted that Court Hill was experiencing sub-

stantial operating deficits and net losses compared to the net cash provided by its operating activities."

"On December 24, 2008, Harp, on behalf of Court Hill, signed an amended and restated promissory note in the amount of $2,039,763 in substitution for an August, 2008 promissory note.[3] The note purported to memorialize Court Hill's debt for 'operating expenses as of November 30, 2008, plus accrued interest' by entering into an 'amended and restated promissory note' with Renaissance [Management] for that amount. Harp endorsed this note four times, once for each of the Court Hill member partnerships. Also on December 24, 2008, Harp, on behalf of Court Hill, then entered into an 'amended and restated promissory note,' in the amount of $817,692, with Harp, individually. This note also was for 'operating expenses as of November 30, 2008, plus accrued interest thereon.' Harp also endorsed this note four times, once for each of the Court Hill member partnerships.[4]

"On December 30, 2008, Harp, on behalf of himself and Renaissance [Management], executed a loan agreement and a $1.5 million promissory note with Muni (Muni note). The loan agreement provided in part that $695,963.94 of the loan would be advanced to Harp and Renaissance [Management] 'to be used by [Harp and Renaissance Management] to repay the promissory note made by [Muni] to Harp,' and that proceeds from this loan also were to be used to pay federal, state, and local tax liabilities of Harp and/or Renaissance [Management]. Schedule 7 (f) of the loan agreement contains, inter alia, a listing of the tax obligations of Renaissance [Management]: $950,000 to the Department of Revenue Services; $732,000 to the Internal Revenue Service [IRS]; and $3700 to the city of New Haven.

"Harp, Renaissance [Management], and Muni also entered into a 'pledge and security agreement' on December 30, 2008, whereby Renaissance [Management] and Harp pledged as collateral for the Muni note their interests in and rights under the Court Hill notes. Additionally, on April 1, 2009, Harp, Renaissance [Management], and Muni entered into a 'first amendment to pledge and security agreement' (amended security agreement), which amended the December 30, 2008 pledge and security agreement to include a collateral pledge of two additional notes payable by Court Hill (2009 advance notes), one in favor of Renaissance [Management] in the amount of $251,010 for operating expenses between December 1, 2008, and February 28, 2009, and one in favor of Harp in the amount of $13,572, also for operating expenses during that same period." (Footnotes in original.) *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 634–35.

The defendant was unaware that Harp executed the Court Hill notes and the 2009 advance notes on behalf of the partnerships and in favor of Harp and Renaissance

Management. There also was no evidence that the defendant was aware of the execution of the loan agreement or the pledge and security agreement between Harp and Muni in December, 2008.[5] The entire principal balance of the Muni note was due and payable on December 31, 2010, but no payment was made at that time.[6]

In May or June, 2011, Harp told his son Wendell Matthew Nathaniel Harp that he had been diagnosed with terminal cancer and asked his son to return home and take over Harp's businesses. In November, 2011, Harp, as the Court Hill managing general partner, divested Court Hill of its real property assets through four separate purchase and sale agreements. In three of these transactions, Harp transferred the real property assets of GAB, BHP, and WCH to limited liability companies owned and controlled by his son.[7] Additionally, on November 4, 2011, Harp executed a purchase and sale agreement transferring Renaissance Hill's real property assets to ASPIC Renaissance, LLC—an affiliate of the plaintiff—for the purchase price of $2,800,000. Although the total stated consideration for all of the real property assets sold was $6,850,000, which represented the purported fair market value of the properties, neither the Court Hill partnerships nor their partners received any proceeds from the transactions. Instead, the buyers paid off mortgages owed on the properties in the amount of $1,830,272.23 and became co-obligors on the Court Hill notes. Thus, as a result of these transactions, Court Hill lost more than $5 million of equity in real estate assets and remained liable, along with its general partners and the purchasers of those assets, for the Court Hill notes executed by Harp on behalf of Court Hill. Harp did not notify the defendant that he sold Court Hill's real property assets to entities controlled by his son and the plaintiff. On December 2, 2011, Harp died, and his son became the president of Renaissance Management.

On January 8, 2014, after not receiving any payment from Harp or Renaissance Management on the Muni note, Muni declared the note in default and held a public sale of the collateral securing the Muni note—the Court Hill and 2009 advance notes. Muni was the highest bidder at the auction and took title to the Court Hill notes and the 2009 advance notes. Muni thereafter transferred legal title of those notes to its subsidiary, the plaintiff, which brought this action to enforce the Court Hill notes and the 2009 advance notes against the defendant, as a general partner in Court Hill. The plaintiff did not seek to enforce the notes against the Court Hill partnerships, Harp's estate, Bumbray, or any of the entities that became co-obligors on the notes when they purchased the Court Hill properties in 2011, including the plaintiff's affiliate, ASPIC Renaissance, LLC.

In response to the plaintiff's complaint, the defendant filed an answer and amended special defenses. At issue

in this appeal is the defendant's eighth special defense that the plaintiff is barred from recovery by virtue of Harp's breach of his fiduciary duties to the defendant. The defendant argued that Harp breached his fiduciary duties by (1) executing the Court Hill notes and the 2009 advance notes on behalf of the Court Hill partnerships, for his own benefit, without providing sufficient notice to the defendant that he was doing so, (2) entering into the Muni note and using the Court Hill notes and the 2009 advance notes as collateral, also without notifying the defendant, and (3) selling the real property assets of the Court Hill partnerships to entities controlled by his son or an affiliate of the plaintiff for inadequate consideration, again without informing the defendant that he was doing so.

Before the trial court, the parties agreed that, because the plaintiff acquired the notes after the notes were in default, the plaintiff stood in Harp's shoes and, therefore, owed a fiduciary duty to the defendant. Accordingly, the plaintiff conceded that, if Harp breached his fiduciary duty to the defendant, it would be precluded from enforcing the notes. The plaintiff also conceded that, because Harp owed a fiduciary duty to the defendant, it bore the burden of proving, by clear and convincing evidence, that the transactions at issue constituted fair dealing by Harp. The plaintiff claimed that Harp dealt fairly with the defendant, arguing that the evidence established that the defendant was well aware of the substantial amounts Court Hill owed Harp and Renaissance Management, and that Harp explicitly told the defendant that he intended to borrow money from Muni and to assign to Muni, as collateral for the loan, the receivables owed to him and Renaissance Management. The plaintiff also argued that the liquidation of Court Hill's real property assets in 2011 was separate and distinct from the transactions involving the Court Hill and 2009 advance notes and in no way tainted its right to enforce those notes.

On March 20, 2018, the court held a one day bench trial. On November 8, 2018, the court rendered judgment in favor of the defendant on his special defense asserting a breach of fiduciary duty, concluding that Harp breached his fiduciary duty to the defendant. The court reasoned: "The plaintiff produced no rebuttal evidence that either Bumbray or the defendant was aware of Harp's endorsement of the Court Hill notes over to himself and/or to Renaissance. The court finds the testimony of Bumbray and the defendant, both of whom denied any prior knowledge of Harp's endorsements, to be highly credible.[8] The plaintiff presented no transcripts from any meetings of the general partners regarding said endorsements and there was no evidence that any such meetings were held." (Footnote added.) The plaintiff now appeals. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court improp-

erly (1) concluded that Harp, as the plaintiff's predecessor in interest, breached his fiduciary duties to the defendant and (2) rendered judgment for the defendant on the Court Hill notes and the 2009 advance notes issued to Renaissance Management even though it concluded that Renaissance Management had not breached any fiduciary duty it owed to the defendant. We address each claim in turn.

I

The plaintiff first claims that the court's conclusion that Harp breached his fiduciary duties to the defendant was premised on multiple legal errors and clearly erroneous factual findings. The plaintiff argues that the court improperly (1) found that the defendant lacked notice of the Court Hill notes, the 2009 advance notes, and the Muni note, (2) failed to consider all of the relevant factors under *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 635 A.2d 798 (1994), and (3) analyzed Harp's performance of his fiduciary duties to the defendant.

We begin with the standard of review and legal principles relevant to our resolution of the plaintiff's claims. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts as they appear in the record. . . .

"[W]hen the resolution of a question of law, such as the existence of a fiduciary duty, depends on underlying facts that are in dispute, that question becomes, in essence, a mixed question of fact and law. Thus, we review the subsidiary findings of historical fact, which constitute a recital of external events and the credibility of their narrators, for clear error, and engage in plenary review of the trial court's application of . . . legal standards . . . to the underlying historical facts." (Citation omitted; internal quotation marks omitted.) *Saggese* v. *Beazley Co. Realtors*, 155 Conn. App. 734, 751–52, 109 A.3d 1043 (2015). "Appellate review of facts on which a claim of breach of fiduciary duty is based is subject to the clearly erroneous standard." *Chioffi* v. *Martin*, 181 Conn. App. 111, 136, 186 A.3d 15 (2018).

As a preliminary matter, we reiterate—as we did in *ASPIC*—that it is undisputed that Harp owed a fiduciary duty to the defendant, and that the plaintiff is bound by that fiduciary duty. See *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 641 n.6 ("The court found, and the parties do not dispute, that the plaintiff, having acquired the Court Hill collateral notes after the notes were in default, is not a holder in due course under General

Statutes § 42a-3-302 (a), and that the plaintiff is subject to any personal defenses that the defendant could have asserted against Harp and Renaissance. The parties also agree that the plaintiff stands in Harp's shoes and owes a fiduciary duty to the defendant.").

"Our Supreme Court has recognized that partners are generally bound in a fiduciary relationship and act as trustees toward each other and toward the partnership. . . . Proof of a fiduciary relationship imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence. Once a fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of proof of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citation omitted; internal quotation marks omitted.) *Spector* v. *Konover*, 57 Conn. App. 121, 127, 747 A.2d 39, cert. denied, 254 Conn. 913, 759 A.2d 507 (2000).

Thus, the central issue for this court is whether the trial court properly concluded that Harp breached his fiduciary duty to the defendant because the plaintiff failed to prove fair dealing by clear and convincing evidence. Accordingly, we review the court's factual findings for clear error and conduct a plenary review of the court's ultimate conclusion as to whether the plaintiff proved that Harp did not breach his fiduciary duty to the defendant. See *Saggese* v. *Beazley Co. Realtors*, supra, 155 Conn. App. 751–52.

A

The plaintiff first contends that the court erred by finding that the defendant lacked notice of the Court Hill notes, the 2009 advance notes, and the Muni note. Specifically, the plaintiff argues that the court's determination was inconsistent with both the factual record—in that the court cited to nonexistent testimony while ignoring clear and convincing evidence of notice to the defendant—and the well established legal principles regarding fair dealing. We disagree.

The following additional facts are relevant to our resolution of the plaintiff's claim. At trial, the plaintiff proffered the following evidence in support of its claim that the defendant had notice of the transactions at issue. In a February 4, 2008 letter to the defendant and Bumbray, Harp requested financial assistance to pay off some of Court Hill's debts, including delinquent sewer fees assessed to Renaissance Hill. In order to prevent one of Renaissance Hill's creditors from seizing its property, Harp claimed that he immediately borrowed $60,000 to settle pending foreclosure sale judgments. Harp requested that Bumbray and the defendant

each loan him $150,000 to help cover existing debts, allowing him more time to negotiate "a less stringent loan plan." At trial, the defendant acknowledged receipt of the letter and testified that he did not offer to help pay off the sewer debt.

In another correspondence from Harp to the defendant dated March 20, 2008, Harp explained the extent of Court Hill's debts and outlined a plan to effect a buyout of Bumbray and the defendant. Harp wrote: "I am in need of borrowing another [$1.5 million plus or minus] to cover partial payments on the [Connecticut] taxes, installment payment of IRS withholding taxes, sewer [and] utility fees, vendor debts, partial reimbursement to me, and related expenses. [Muni] has expressed a willingness to fund these subject to their ability to [effect] a [buyout] of the other Court Hill general partners and overall agreement of you and [Bumbray] converting to [limited] partners or [you and Bumbray] paying substantially on the general partner obligations! In the event the [buyout] is not agreed upon I will simply borrow the additional funds available to me and assign my collateral debts from Court Hill to [Muni]." (Emphasis omitted.)

The defendant testified that Harp told him in 2008, that Court Hill needed operating funds and that he intended to borrow money from Muni if necessary. When shown the March 20, 2008 letter, the defendant acknowledged that he did not agree to the buyout proposed by Harp and that the letter informed him that, if he did not agree to the buyout, Harp intended to borrow additional funds and assign his collateral debts from Court Hill to Muni.

The record does not reflect any evidence that, prior to executing the Court Hill notes or the 2009 advance notes, Harp ever communicated to the defendant that he intended, as Court Hill's managing general partner, to issue promissory notes to himself and Renaissance Management memorializing the amounts he claimed were owed by Court Hill. The record also does not reflect any further communications between Harp and the defendant regarding the possible assignment of Harp's and Renaissance Management's claims to Muni between March and December, 2008, when the Muni note was executed.

As previously stated in this opinion, the plaintiff had the burden to prove, by clear and convincing evidence, that Harp dealt fairly with the defendant with respect to the transactions at issue. See *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 219 ("[o]nce a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary" (internal quotation marks omitted)). "Our Supreme Court has stated that [i]t is a thoroughly [well settled] equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his

own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. . . . The rule applies alike to agents, *partners*, guardians, executors and administrators." (Emphasis in original; internal quotation marks omitted.) *Spector* v. *Konover*, supra, 57 Conn. App. 128.

In *Spector*, this court, referencing our Supreme Court's decision in *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 228, noted that, in certain circumstances involving sophisticated business ventures, "a fiduciary may demonstrate that a particular transaction is fair by showing (1) that the fiduciary made a free and frank disclosure of all the relevant information he had, (2) that the consideration was adequate, (3) that the principal had competent and independent advice before completing that transaction, and (4) the relative sophistication and bargaining power among the parties." *Spector* v. *Konover*, supra, 57 Conn. App. 128–29. As this court noted, however, this standard does not diminish the nature of a partner's fiduciary duties. Rather, "[t]he *Zeller* standard effectively preserves the heightened standards required of fiduciaries while allowing parties in a fiduciary relationship the flexibility to contract freely among themselves. . . . To invoke the *Zeller* standard in an attempt to justify the fairness of a particular transaction, the fiduciary must first be able to show that there was some agreement among the parties allowing the fiduciary to act in a manner that may otherwise be a breach of fiduciary duty." Id., 129.

The plaintiff, relying on the *Zeller* standard, points to the February and March, 2008 letters of correspondence from Harp to the defendant and the Court Hill audited financial statements as evidence of a free and frank disclosure of the relevant information relating to Harp's execution of the Court Hill and 2009 advance notes and the pledge of those notes as collateral for the Muni note. We agree that the February and March, 2008 letters are evidence that Harp notified the defendant about a tentative plan to enter into a pledge and security agreement with Muni to secure a loan. We also agree that the audited financial statements are evidence that Court Hill owed a debt to Harp and Renaissance Management. Significantly, however, neither the letters nor the audited financial statements constitute evidence of Harp notifying the defendant of his intent to issue promissory notes totaling more than $3 million on behalf of Court Hill to himself and to Renaissance Management or that he intended to pledge these notes as collateral for the Muni note.

Consequently, the plaintiff cannot claim that the court's specific finding that the defendant was unaware "of

Harp's endorsement of the Court Hill notes over to himself and/or to Renaissance [Management]" was clearly erroneous. There was no evidence, let alone clear and convincing evidence, that the defendant was aware of the execution of those notes, the 2009 advance notes, or the Muni note. Instead, the plaintiff essentially argues that the defendant's knowledge of (1) Court Hill's debts owed to Renaissance Management and Harp and (2) Harp's plan to borrow money from Muni using those debts as collateral for the Muni note constitutes a free and frank disclosure of the terms of the Court Hill notes, the 2009 advance notes, and the Muni note to the defendant before they were executed. We disagree.

Owning accounts receivable, even if confirmed by Court Hill's audited financial statements, is materially different from being the holder of a promissory note that provides a clear and explicit obligation to pay the amount set forth in the note pursuant to specific terms. For example, a claim by Harp or Renaissance Management for operating expenses incurred on behalf of Court Hill would require proof of such expenses and the amount due. See, e.g., *Day* v. *Len-Metal-Fab, Inc.*, 3 Conn. Cir. 249, 253, 212 A.2d 426 (1965) ("[t]he burden of proof was upon the plaintiff to establish by a fair preponderance of the evidence the substantial allegations of his complaint, among which were the rendition of services alleged, the rate of compensation, and the time required to perform such services"). After the execution of the Court Hill and 2009 advance notes in specific amounts, the ability of Court Hill or its general partners to challenge the amount owed to Harp and Renaissance Management became much more difficult. See, e.g., *Financial Freedom Acquisition, LLC* v. *Griffin*, 176 Conn. App. 314, 323, 170 A.3d 41 ("The possession by the bearer of a note [e]ndorsed in blank imports prima facie [evidence] that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note [endorsed in blank] establishes [the possessor's] case prima facie against the makers and he may rest there." (Internal quotation marks omitted.)), cert. denied, 327 Conn. 931, 171 A.3d 454 (2017).

In addition, the Court Hill and 2009 advance notes gave Harp and Renaissance Management remedies not available to them without the notes. For example, the notes include: a standard interest rate of 10 percent and a default interest rate of an additional 5 percent; a waiver of Court Hill's right to a jury trial; a waiver of notice and a hearing should Harp or Renaissance Management seek a prejudgment remedy; and a provision requiring Court Hill to pay reasonable attorney's fees if the holder of the notes employs counsel to enforce them. None of these remedies would have been available to Harp or Renaissance Management in the absence of the notes.

Moreover, § 33 of the "Management and Affirmative Fair Marketing Agreement" between one of the partnerships, Renaissance Hill, and Renaissance Management,[9] provides: "If Owner is a partnership, *no partner of Owner shall be held to any personal liability, nor shall resort be had to his, her or its private property for satisfaction of any obligation or claim arising out of this Agreement,* unless such partner has specifically undertaken performance of the obligations of Owner by executing this Agreement in his or her personal capacity. Only the Development assets of Owner shall be liable and subject to levy or execution on account of any liability of Owner arising hereunder. A deficit capital account [of a] partner of Owner shall not be deemed to be an asset or property of Owner." (Emphasis added.) Thus, by issuing the Court Hill and 2009 advance notes, Harp circumvented the contractual limits of liability for obligations arising under the management agreement and converted a nonrecourse debt obligation into a recourse debt obligation.

Finally, the mere fact that the partnership agreements authorized Harp to execute the Court Hill notes, coupled with the defendant's knowledge of debts owed to Harp and Renaissance Management and of Harp's contemplation of a potential loan transaction with Muni, did not relieve Harp of his fiduciary duty to disclose to the defendant all relevant information specific to the Court Hill and 2009 advance notes. As this court has previously stated: "The terms of a . . . partnership agreement cannot negate the fiduciary duty of the general partner even where the relationship and terms of a contract between the fiduciary and its affiliate are disclosed and even where the partnership involves sophisticated parties. . . . *Zeller* requires more than a disclosure of the relationship and terms underlying the transaction. *Zeller* requires that the fiduciary make a free and frank disclosure of all the relevant information it has about *the particular transaction*." (Citation omitted; emphasis in original.) *Springfield Oil Services, Inc.* v. *Conlon*, 77 Conn. App. 289, 302–303, 823 A.2d 345 (2003). Put another way, Harp's fiduciary duty was not simply to inform the defendant that Court Hill was in debt but, rather, to keep the defendant apprised of the details of Court Hill's repayment plans, especially when those plans implicated the defendant to the extent that they did here.

In sum, the February and March, 2008 letters of correspondence and annual audited financial statements fall short of clear and convincing evidence of fair dealing. Accordingly, we reject the plaintiff's contention that the court could not have reasonably found that the defendant lacked notice of the Court Hill notes, the 2009 advance notes, and the Muni note.

B

The defendant next argues that the court erred in failing to consider all of the relevant factors under *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 206. We disagree.

As previously noted in this opinion, in certain circumstances, "a fiduciary may demonstrate that a particular transaction is fair by showing (1) that the fiduciary made a free and frank disclosure of all the relevant information he had, (2) that the consideration was adequate, (3) that the principal had competent and independent advice before completing that transaction, and (4) the relative sophistication and bargaining power among the parties." *Spector* v. *Konover*, supra, 57 Conn. App. 128–29.

Having concluded in part I A of this opinion that Harp failed to make a free and frank disclosure of all relevant information to the defendant, the plaintiff's claim regarding application of the other *Zeller* factors fails. We conclude that the other *Zeller* factors cannot outweigh, as a matter of law, the failure to make a free and frank disclosure. This is particularly true as to the third and fourth factors. Indeed, a party cannot have competent and independent advice about a transaction as to which there has not been a free and frank disclosure of all relevant information. Similarly, a party's level of sophistication to understand a transaction is of little value if the party does not know about the transaction.

As to the second *Zeller* factor regarding the adequacy of consideration, adequate consideration is a necessary, not sufficient, condition to establish fair dealing. As we have previously stated: "The standard articulated in *Zeller* is most appropriately applied in situations where a principal challenges the fairness of a particular transaction in which both the principal and the fiduciary made *a fully informed decision to act* in a manner that is seemingly contrary to the normal fiduciary relationship. *Implicit in the Zeller standard is the requirement that the principal consent to the transaction carried out by the fiduciary.* To invoke the *Zeller* standard in an attempt to justify the fairness of a particular transaction, *the fiduciary must first be able to show that there was some agreement among the parties allowing the fiduciary to act in a manner that may otherwise be a breach of fiduciary duty.*" (Emphasis added.) *Spector* v. *Konover*, supra, 57 Conn. App. 129. Thus, although the lack of adequate consideration may lead to a conclusion that a fully disclosed transaction nevertheless constitutes a breach of fiduciary duty, adequate consideration alone will not establish fair dealing as to a transaction that was not fully disclosed to the principal and to which the principal did not agree. Consequently, in light of the court's conclusion that Harp failed to disclose all relevant information regarding the Court Hill and 2009 advance notes, the trial court did not err in failing to address the other *Zeller* factors.

## C

The plaintiff also claims that the court, in reaching its conclusion that Harp breached his fiduciary duty to the defendant, committed a number of legal errors that require reversal. In particular, the plaintiff claims that the trial court incorrectly (1) relied on the 2011 sales of Court Hill's real property assets because those transactions were separate and distinct from the execution of the Court Hill and 2009 advance notes and, therefore, any breach of fiduciary duty by Harp in completing those transactions cannot be attributed to the plaintiff, (2) concluded that it was a breach of fiduciary duty that Harp benefitted from the Court Hill and 2009 advance notes, even though Court Hill also benefitted from those notes, (3) based its conclusion on a nonexistent duty that Harp ensure that the defendant was released from liability under the Muni note, and (4) imposed a nonexistent duty on Harp to have a formal meeting with his partners before executing the Court Hill notes. We are not persuaded.

The plaintiff misconstrues the import of the court's conclusion and minimizes the central finding of the court that Harp failed to disclose to the defendant that he was converting his accounts receivable claims against Court Hill into promissory notes that he then would use to secure loans for himself and Renaissance Management. Although the court did mention in its memorandum of decision that Harp did not provide the defendant with notice prior to selling Court Hill's real property assets, the court made clear that Harp's breach of fiduciary duty, as it relates to the plaintiff's right to enforce the Court Hill and 2009 advance notes, occurred much earlier. The court specifically held: "The defining moment happened once Harp endorsed the notes over to himself and/or Renaissance [Management]: Harp's duty to deal fairly with Court Hill, Bumbray, and the defendant collided with his personal objective in reducing or eliminating his own tax liabilities; he pursued the Muni loan *for a dual purpose*. The notes and Muni loan proceeds benefitted Harp and Court Hill not just Court Hill. The court concludes that the point at which Harp acted on his own behalf, in his own interest too, as Harp, the 'individual,' the 'person,' the 'maker' in his own name, he breached the trust that Court Hill and the other general partners placed in him." (Emphasis in original.) Thus, the court's reference to the sale of the Court Hill real property assets was not the basis for its conclusion that Harp breached his fiduciary duty to the defendant.

Similarly, the plaintiff's claim that the court incorrectly concluded that a fiduciary may not benefit from a transaction that also benefits his principal ignores the court's earlier finding that Harp failed to disclose to the defendant his plan to execute the Court Hill notes and the 2009 advance notes, and pledge them as security

for the Muni note. Thus, it was not just that Harp benefitted from the transaction, but that he did so without making the necessary free and frank disclosure of all relevant information to the defendant. This failure to disclose also undermines the plaintiff's arguments as to whether Harp was required to receive a release of liability for the defendant as part of the Muni loan transaction and its claim that no formal meeting was required to discuss Harp's execution of the Court Hill and 2009 advance notes. Had Harp properly disclosed all relevant information to the defendant and had the defendant agreed to the transactions at issue, the plaintiff might be correct that a formal meeting or a release of liability would not have been required. That, however, did not occur. Simply put, the plaintiff cannot exclude from the court's analysis its key finding, which was not clearly erroneous, that Harp failed to disclose all relevant information relating to the Court Hill notes, the 2009 advance notes, and the Muni note to the defendant. The failure to make a free and frank disclosure of all the information regarding these transactions, which unquestionably personally benefitted Harp to the detriment of the defendant, is fatal to the plaintiff's claims of legal error.

In sum, we conclude that the court's finding that Harp failed to disclose to the defendant all relevant information related to the transactions at issue was not clearly erroneous. We also agree with the court that this failure constituted a breach of fiduciary duty that precludes enforcement of the Court Hill and 2009 advance notes against the defendant.

## II

The plaintiff finally claims that the court improperly rendered judgment for the defendant on the Court Hill and 2009 advance notes issued to Renaissance Management even though it concluded that Renaissance Management had not breached any fiduciary duty it owed to the defendant. This claim is without merit.

In its memorandum of decision, the trial court addressed each of the defendant's special defenses. Although the court found that the defendant prevailed on his breach of fiduciary duty special defense against Harp, it denied his breach of fiduciary duty special defense as to Renaissance Management. It nevertheless rendered judgment for the defendant on all of the plaintiff's claims, both those arising from Harp's Court Hill and 2009 advance notes and those arising from Renaissance Management's Court Hill and 2009 advance notes. The reason for this should be clear. The court rejected the special defense that Renaissance Management breached its fiduciary duty to the defendant because Renaissance Management owed no fiduciary duty to the defendant. Its only relationship to Court Hill and the defendant was as a provider of services to Court Hill. Nonetheless, the transaction by which it received promissory notes from Court Hill was orchestrated by

Harp, for his own benefit and without making a free and frank disclosure to the defendant. The plaintiff, standing in Harp's shoes, cannot avoid the effects of Harp's breach of fiduciary duty simply because Harp created an obligation to a third party he controlled instead of a direct obligation to himself. Allowing Renaissance Management to recover on the Court Hill and 2009 advance notes would provide a road map for how a fiduciary may breach his duty to his principal and then insulate his misconduct from attack. We are unwilling to provide such assistance.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In *ASPIC*, this court noted that the plaintiff owed a fiduciary duty to the defendant because it stood in the shoes of the defendant's former business partner, Harp, and thus, was subject to any personal defenses asserted by the defendant against Harp. *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 641 n.6. In reaching this conclusion, we determined that the defendant's breach of fiduciary duty defense required the trial court to shift the burden of proving fair dealing by clear and convincing evidence to the plaintiff. Id., 642. Because the court did not place any burden on the plaintiff to prove that there was probable cause to believe that the transactions at issue were conducted fairly, this court reversed the judgment of the trial court and remanded the case for further proceedings. Id., 644, 647.

[2] "By the time of the hearing on the prejudgment remedy application, Harp was deceased." *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 634 n.2.

[3] "The amended and restated promissory note provided that it was 'given in substitution for (but not in satisfaction of) a [p]romissory [n]ote of [m]aker to [l]ender in the original principal amount of [$2,007,820] dated on or about August 1, 2008.' It does not appear, however, that the August 1, 2008 note was submitted into evidence at the [prejudgment remedy] hearing [or at trial]." *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 634 n.3.

[4] "These two December 24, 2008 amended and restated promissory notes collectively are referred to as the Court Hill notes." *ASPIC, LLC* v. *Poitier*, supra, 179 Conn. App. 635 n.4.

[5] The defendant admitted receiving a communication from Harp in March, 2008, in which Harp notified the defendant that Harp had borrowed $625,000 from Muni in 2007, and that he assigned "a receivable interest in funds owed [to Renaissance and Harp] . . . ." That purported loan is not the subject of this litigation. In the same communication, Harp informed the defendant that if he and Bumbray did not agree to convert their general partner interests in Court Hill to limited partner interests, he would borrow approximately $1.5 million from Muni to cover various expenses arising out of Court Hill's operations and would "assign my collateral debts from Court Hill to [Muni]." Harp further told the defendant that, "after May 1, 2008, I will have put in place the final agreement on [the Muni] loan/investment—and they will probably move aggressively to consolidate their loans and enforce general partner financial responsibility and collection." The significance of this communication is discussed further in part I A of this opinion.

[6] Muni's managing partner, Richard Corey, testified at trial that, in early 2017, a payment in the amount of $710,443 was made toward the Muni note after one of the properties that secured the note was sold.

[7] In the first sale, acting on behalf of GAB, Harp sold one property to HOW WH, LLC, for the purchase price of $850,000. In the second sale, acting on behalf of WCH, Harp sold another property to ROB WH, LLC, for the purchase price of $1.3 million. In the third sale, acting on behalf of BHP, Harp sold a third property to LEG WH, LLC, for the purchase price of $1.9 million.

[8] The parties agree that the court's statements regarding Bumbray's testimony are clearly erroneous because Bumbray did not testify. Nevertheless, because the plaintiff had the burden to prove, by clear and convincing evidence, what the defendant knew, and because the plaintiff presented no evidence that the defendant was aware of the execution of the notes, the court's error was harmless.

[9] This was the only management agreement introduced at trial.